#25070-a-MILLER, Retired Justice

**2009 SD 105**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

  v.

ADAN MIRANDA,                             Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN BROWN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


JACK C. MAGEE
Magee Law Office
Pierre, South Dakota                      Attorney for defendant
                                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 5, 2009

OPINION FILED **12/02/09**

#25070

MILLER, Retired Justice

[¶1.] In this decision, we affirm the circuit court and hold it did not err in refusing to dismiss charges of third degree burglary or in permitting other acts evidence from defendant's earlier burglary conviction.

[¶2.] In January 2008, Adan Miranda was a patron at the American Legion (Legion) in Pierre, South Dakota; however, he remained in the establishment after closing time without permission. After a silent alarm sounded, police observed Miranda exiting the Legion. After a short chase, he was arrested and charged with various crimes. Miranda moved to dismiss the charges and the State moved to introduce other acts evidence pursuant to SDCL 19-12-5 (Rule 404(b)). Miranda's motion was denied and the State was permitted to admit other acts evidence. The jury convicted Miranda on all counts. He appeals the circuit court's order denying his motion to dismiss the charge of third degree burglary. Miranda asserts that because he was privileged or licensed to enter the Legion, he cannot be convicted of burglary under SDCL 22-32-8. Additionally, he appeals the circuit court's order granting the State's motion to introduce other acts evidence. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶3.] On January 29, 2008, Miranda and his wife were at the Legion in Pierre, South Dakota, and sometime before the facility closed for the night they left to go home. However, after an argument ensued as they walked to their vehicle, Miranda returned to and remained in the Legion without his wife. Later, when the bartender, Shannon Nelson (Bartender), did the final walk-through as part of the normal closing routine, he did not check the party room because it was too dark.

Also, he did not check the bathrooms and a storage room near the party room. Unaware of Miranda's presence in the building, the Bartender did not personally tell him to leave or that he had permission to remain before arming the alarm and leaving the building around 3:00 a.m.

[¶4.] At approximately 3:23 a.m., Pierre police officers Bryan Walz and John Weber were on duty and received a dispatch indicating a silent burglar alarm had been activated at the Legion. When the officers arrived at the Legion, Walz began checking exterior doors and windows while Weber drove around the main parking lot. No forcible entry was detected.

[¶5.] As Weber continued the investigation of the remaining portions of the Legion, specifically while Weber shined his flashlight into the kitchen, Walz observed an individual suddenly open a door and run out. Walz ordered the person to "show his hands and lie upon the ground." After pretending to kneel, the individual took off running and Walz pursued. Following a short chase, Walz detained the individual who was later identified as Miranda.

[¶6.] After arresting and securing Miranda, Officer Walz and other Pierre police officers examined the interior of the Legion. The other Pierre police officers that arrived at the scene after Miranda was detained did not see signs of forced entry. They concluded that Miranda had concealed himself in a storage area at closing time and had removed the hinge pins from another door to gain access to a safe in a different part of the building. The police contacted the Bartender and asked him to return to the Legion.

[¶7.]     The Bartender confirmed two hinge pins had been removed from the door to the liquor room and safe. He also pointed out other different conditions from when he closed, including: the French doors which went from the party room into the bar were busted; a sign had been knocked onto the floor; some straws had been scattered on the ground; the wooden lottery drawer had been opened, although the change inside was still there; the door to the walk-in cooler was open and the light had been turned on; and, someone had turned a light on in the manager's office where extra liquor is stored.

[¶8.]     The manager, Don Henrichsen (Manager), was also contacted after the silent alarm sounded. He testified that he checked for damage the next day and made the following observations: the locks on the doors going into the meeting room "were all bent up;" that there was no reason for either himself or any Legion employee to remove the hinge pins from the door to the liquor and safe room because it can be easily unlocked with their key; the hinge pins could have been pulled out with the crescent wrench and knife found nearby; and, the motion detector was the only security device in the building and it is possible to move around with the detector on because it has short range and does not reach certain areas.

[¶9.]     On March 17, 2008, the State filed an amended complaint that charged Miranda with three counts: (count I) third degree burglary; (count II) obstructing a law enforcement officer; and, (count III) intentional damage to private property. Subsequently, the State filed a Part II Information for Habitual Offender because Miranda had been convicted of third degree burglary in October 2001. Miranda

moved to dismiss the charges and the State moved to introduce other acts evidence pursuant to SDCL 19-12-5. Miranda's motion to dismiss was denied and the State was permitted to admit other acts evidence.

[¶10.] Because the State's motion to admit other acts evidence was granted, the circumstances of Miranda's May 2001 burglary of the Eagle's Club in Aberdeen, South Dakota, were recounted at trial. The State offered testimony of Randy Majeske, a retired detective, who explained that at the Eagle's Club crime scene police had also failed to find any evidence of forced entry and that Miranda had hidden inside at closing time before stealing a safe and using a two-wheel cart to transport the safe to a nearby apartment complex. Majeske confirmed Miranda had removed the safe's hinges to get the money inside before he inadvertently left behind his Job Corps card at a nearby vacant apartment. Miranda's wife confirmed Miranda had stolen the safe in 2001, and admitted he had a gambling problem "back then." She also admitted that one of her family's vehicles was repossessed in January 2008, but denied Miranda still had a gambling problem or was in a bad financial situation.

[¶11.] The jury convicted Miranda on all counts and he appeals claiming the circuit court's order denying his motion to dismiss the charge of third degree burglary. Because he was a patron at the Legion earlier that night, he contends he could not be convicted of burglary under SDCL 22-32-8. Additionally, he appeals the circuit court's order granting the State's motion to introduce other acts evidence.

## ISSUES

1. Whether the circuit court abused its discretion in denying Miranda's motion to dismiss the third degree burglary charge because Miranda lawfully entered the Legion.

2. Whether the circuit court abused its discretion when it granted the State's motion to admit other acts evidence pursuant to SDCL 19-12-5 that related to Miranda's previous burglary conviction on October 30, 2001.

## ANALYSIS & DECISION

[¶12.] **1. Whether the circuit court abused its discretion in denying Miranda's motion to dismiss because Miranda had a privilege and license to enter.**

[¶13.] The first issue that we must resolve is whether Miranda can be convicted of third degree burglary under SDCL 22-32-8 even though he was "licensed" and "privileged" to enter the Legion.[1] Miranda asserts that when the definition of third degree burglary was amended in 2005,[2] prior case law was "effectively repealed" and a person who is a guest/patron of a business cannot commit third degree burglary of that business. *See* State v. Burdick, 2006 SD 23, ¶25, 712 NW2d 5, 11 (Meierhenry, J., dissenting). While we recognize that the

---

1. The State asserts that because Miranda failed to provide a transcript of the May 2, 2008 hearing, he has provided an inadequate record and therefore has waived this issue. We disagree. Whether the circuit court abused its discretion in denying Miranda's motion to dismiss depends on the statutory interpretation of SDCL 22-32-8. "Our review of statutory interpretation is de novo, giving no deference to the circuit court's conclusions of law." State v. Moss, 2008 SD 64, ¶9, 754 NW2d 626, 629 (citation omitted). Therefore, because Miranda on numerous occasions raised this issue preserving it for appeal, and the record includes written findings of fact and conclusions of law sufficient to decide this issue, it has not been waived by failing to include the May 2, 2008 transcript.

2. 2005 SD Sess. Laws ch 120 § 109.

South Dakota Legislature effectively narrowed the application of third degree burglary with the 2005 amendment, we affirm its application to Miranda who remained in the Legion without a license or privilege with intent to commit a crime.

[¶14.] "We review the trial court's denial of a motion to dismiss under an abuse of discretion standard." State v. Williams, 2008 SD 29, ¶23, 748 NW2d 435, 442 (citing State v. Carothers, 2006 SD 100, ¶8, 724 NW2d 610, 615-16). In deciding whether the circuit court abused its discretion, we must engage in statutory interpretation.

> Statutory interpretation and application are questions of law, and are reviewed by this Court under the de novo standard of review. Statutory construction is employed to discover the true intent of the legislature in enacting laws, which is ascertained primarily from the language employed in the statute. We give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject.

Chapman v. Chapman, 2006 SD 36, ¶¶10-11, 713 NW2d 572, 576 (internal citations and quotations omitted). "When the language is clear and unambiguous, our only function is to declare the meaning of the statute as clearly expressed." Burdick, 2006 SD 23, ¶6, 712 NW2d at 7 (citing MGA Ins. Co. v. Goodsell, 2005 SD 118, ¶9, 707 NW2d 483, 485).

[¶15.] This Court methodically reviewed the history of SDCL 22-32-8 in Burdick, and we review it to a lesser extent here incorporating that discussion where necessary. Prior to 1976, SDCL Ch 22-32 defined burglary in the same way as the common law: "breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony." See State v. Pellegrino, 1998 SD 39, ¶14, 577 NW2d 590, 596 (citation omitted); SDCL Ch 22-32 (as codified in SDCL Ch

22-32 from 1941 to 1976).  In 1976, the South Dakota Legislature replaced the prior third degree burglary statute with SDCL 22-32-8, which provided:  "Any person who enters or remains in an unoccupied structure, with intent to commit any crime therein, is guilty of third degree burglary.  Third degree burglary is a Class 4 felony."  A few notable cases interpreted the post-common law burglary statutes in holding:  consent to enter was irrelevant, State v. Blair, 273 NW2d 187 (SD 1979), and "remains" in the statutes means unlawful presence or presence without authority in the structure, *In re* T.J.E., 426 NW2d 23, 25 (SD 1988).

[¶16.]        The facts of *T.J.E.*— involving the possible application of second degree burglary to an eleven year-old who ate a piece of Easter chocolate after lawfully entering a retail store with her aunt, but who left without paying for the chocolate—moved the South Dakota Legislature to amend the statute.  In 1989, SDCL 22-32-8 was amended to read:

> Any person who enters an unoccupied structure, with the intent to commit any crime *other than the act of shoplifting or retail theft as described in chapter 22-30A constituting a misdemeanor*, or remains in an unoccupied structure after forming the intent to commit any crime *other than shoplifting as described in chapter 22-30A constituting a misdemeanor*, is guilty of third degree burglary.  Third degree burglary is a Class 4 felony.

(Emphasis added.)  These 1989 amendments[3] to the burglary statutes created an exception for shoplifters (like T.J.E.), and seemingly rejected our reasoning in *T.J.E.* that "remains" means unlawful presence or presence without authority in the structure.  *T.J.E.*, 426 NW2d at 25.

---

3.        1989 SD Sess. Laws ch 200, §§ 1-3 (exempting shoplifting or retail theft of minor amounts from the offense of burglary).

[¶17.]     Despite the absence of any language in the statute after the 1989 amendment to reflect our holding in *T.J.E.*, we continued to interpret "remains" in the burglary statutes as "unlawfully remains." *See* State v. Oster, 495 NW2d 305, 312 (SD 1993) (citing *T.J.E.*, 426 NW2d at 25); State v. Derby, 462 NW2d 512, 513 (SD 1990) ("[B]urglary must be committed by a person who has no right to be in the building or structure burglarized." (citing *T.J.E.*, 426 NW2d at 24)). These cases indicate that the interpretation of "remains" as "unlawfully remains" from *T.J.E.* continued as an integral part of the 1989 version of SDCL Ch 22-32 until *Burdick*. 2006 SD 23, 712 NW2d 5 (overruling *T.J.E.* and similar cases).

[¶18.]     We noted in *Burdick* that, despite the decisional law available to the Legislature, the 1989 amendment to SDCL 22-32-8 "did not require an unlawful presence or presence without authority as we held in *T.J.E.*[,] [n]or did it eliminate the possibility that an individual could be guilty of burglary when forming intent to commit any crime and 'remaining' in the structure." *Burdick*, 2006 SD 23, ¶11, 712 NW2d at 8. In *Burdick*, we decided the proper interpretation of SDCL 22-32-8 was clear from the plain meaning of the statute and it "does not require unlawful presence or presence without authority." *Id.* ¶16, 712 NW2d at 9.

[¶19.]     *Burdick*, however, was decided in the interim between when the South Dakota Legislature again amended SDCL 22-32-8 and when the amendment became effective July 1, 2006. As amended, the current version of SDCL 22-32-8 provides:

> Any person who enters or remains in an unoccupied structure, other than a motor vehicle, with intent to commit any crime, *unless the premises are, at the time, open to the public or the*

> *person is licensed or privileged to enter or remain,* is guilty of
> third degree burglary.  Third degree burglary is a Class 4 felony.

(Emphasis added.)  It is through reviewing the plain language of the statute, the legislative history, and prior precedent, that we decide this case.

[¶20.]        This statute, broken down to its elements, required the State to prove that:

1. Miranda
   i. entered *or*
   ii. remained;
2. in an unoccupied structure;
3. with intent to commit any crime.

SDCL 22-32-8 (emphasis added).  If the State proves these elements, a person cannot be convicted of third degree burglary if:

1. the unoccupied structure is a motor vehicle; or
2. the premises are, at the time, open to the public; or
3. the person is:
   a. licensed to enter the structure;
   b. privileged to enter the structure;
   c. licensed to remain in the structure; or
   d. privileged to remain in the structure.

*Id*.  Therefore, Miranda contends, because it is undisputed he was privileged to enter the Legion, he did not commit burglary under this statute.  However, a logical reading of the statute as a whole, together with the legislative history, does not support his position.

[¶21.]        The plain language of this statute indicates the Legislature's intent to criminalize the entering *or remaining* in an unoccupied structure with the intent to commit any crime.  The statute then codifies our rationale found in *T.J.E., Derby*, and *Oster* by requiring that the entering or remaining be without privilege or license; i.e., unlawfully enter or unlawfully remain.  Thus, Miranda's interpretation

of the statute is partially correct; but, when read as a whole, his interpretation

ignores the structure of the statute and the Legislature's enumeration of two

*separate* means of achieving the requisite trespass for burglary: enters *or remains*.

[¶22.] Prior to the 1976 Session Law that completely rewrote South Dakota's

burglary statutes,[4] we adhered to the common law elements. The 1976

amendment, and all later versions of SDCL 22-32-8, expanded the trespass element

of burglary to include situations in which a defendant "remains." *See Burdick*, 2006

SD 23, ¶24, 712 NW2d at 11 (Meierhenry, J., dissenting) ("As evidenced by statute .

. . our Legislature broadened the definition of burglary . . . ."); Bickel v. Jackson, 530

NW2d 318, 320 (ND 1995) ("There is a presumption the legislature acts with

purpose and does not perform idle acts."). Therefore, under the current version of

SDCL 22-32-8, this addition of "remains" in the phrase "enters or remains" applies

when a person enters with a "license or privilege" but unlawfully remains on the

premises after the termination of such license or privilege. Therefore, when

Miranda entered the Legion during regular business hours but later hid himself in

the dark "party room" until after the Legion was closed, he entered with a privilege

or license, but he *remained without a license or privilege* within the meaning of

SDCL 22-32-8.

[¶23.] Miranda contends that because he entered with a privilege or license,

he cannot be convicted for burglary.[5] Under Miranda's interpretation, the only type

---

4.  1976 SD Sess. Laws ch 158 §§ 32-1 to 32-5.

5.  Miranda contends that because he was not personally told to leave he was
    privileged to remain. If the Bartender knew of Miranda's presence this

(continued . . .)

of trespass that can result in burglary is entering without privilege or license. Miranda's interpretation is contrary to the plain language of the statute which reads "enters *or remains*." Miranda's interpretation would nullify and make meaningless the word "remains" in the statute and, therefore, it fails to construe the statute as a whole, "giving effect as far as possible to all parts thereof, so as to harmonize them and effectuate the legislative intentions as therein expressed." Anderson v. City of Sioux Falls, 384 NW2d 666, 669 (SD 1986) (citation omitted). Because we do not read a statute to make part of it meaningless, we decline to adopt Miranda's interpretation. Peterson v. Burns, 2001 SD 126, ¶30, 635 NW2d 556, 567-68 ("We should not adopt an interpretation of a statute that renders the statute [or part of it] meaningless.").

[¶24.] Entering with a privilege or license does not preclude a later unlawful trespass by remaining without a license or privilege. To hold otherwise would ignore the legislative history, our prior precedent on which the Legislature was guided, and the plain language and structure of the statute. *See* Sanford v. Sanford, 2005 SD 34, ¶19, 694 NW2d 283, 289 ("We presume the Legislature acts with knowledge of our judicial decisions."); Coserv Ltd. Liab. Corp. v. Sw. Bell Tele. Co., 350 F3d 482, 486 (5thCir 2003) ("[I]n matters of statutory interpretation, [court's begin] with the plain language and *structure* of the statute.").

---

(. . . continued)

argument may not be entirely without merit. However, the Bartender did his normal closing routine and told everyone to leave. Furthermore, there is no requirement that a proprietor or employee must personally order someone to leave an establishment after it has closed. *See* People v. Johnson, 162 AD2d 256, 257, 556 NYS2d 869 (NYAppDiv 1990) (citation omitted).

[¶25.] The plain meaning of SDCL 22-32-8 is clear and unambiguous. We hold that under the revised 2006 version of SDCL 22-32-8, consent is relevant but it is an exception for the specific trespass element a defendant is charged with under the statute; i.e., privilege or license to enter is not an exception to burglary committed by unlawfully remaining after the premise is closed to the public. Therefore, the circuit court did not abuse its discretion in denying Miranda's motion to dismiss as to the third degree burglary charge.

[¶26.] **2. Whether the circuit court abused its discretion when it granted the State's motion to admit other acts evidence pursuant to SDCL 19-12-5, which related to Miranda's previous burglary conviction.**

[¶27.] Prior to Miranda's trial, the State moved to admit other acts evidence pursuant to SDCL 19-12-5 (Rule 404(b)). The circuit court ruled that the State:

1. Shall be allowed to introduce evidence of Defendant's 2001 act of burglary at the Eagles Club in Aberdeen to show intent, preparation, plan, and knowledge.
2. May be allowed to introduce evidence of Defendant's 2001 act of Burglary at the Eagle's Club in Aberdeen to show lack of mistake or accident if the Defendant presents evidence to show mistake or accident at trial.
3. May be allowed to introduce evidence of Defendant's 1997 act of Entering or Refusing to Leave Property at 422 S. Main in Aberdeen to show lack of mistake or accident if the Defendant presents evidence to show mistake or accident at trial.

Miranda appeals the circuit court's order granting the State's motion. He claims the probative value of his prior arrests did not substantially outweigh its prejudicial effect because his prior convictions were "too old," were based on the prior version of

SDCL 22-32-8,[6] and created an inference that Miranda was guilty. These arguments are without merit.

[¶28.]     Prior to the admission of other acts evidence, the circuit court was required to conduct a two-step procedure on the record. State v. Owen, 2007 SD 21, ¶14, 729 NW2d 356, 362-63 (citation omitted). "First, the offered evidence must be relevant to a material issue in the case. Second, the trial court must determine '[w]hether the probative value of the evidence is substantially outweighed by its prejudicial effect.'" Id. (citations omitted). Despite the absence of a full transcript, a fair reading of the record as a whole supports our belief that the circuit court did conduct an appropriate balancing of the prior conviction's probative value against its prejudicial effect. And, upon our review of the entire record, we find support for the trial court's ruling that the other acts evidence was material and that its probative value outweighed its prejudicial effect.[7]

---

6.     Miranda claims he was prejudiced when the jury heard of the prior conviction because "the jury may not have considered the change in the elements constituting third degree burglary." However, the jury was provided instructions that explicitly included the current elements of burglary.

7.     Miranda's concerns about the prejudicial effect of his prior conviction were further diminished by jury instructions which stated:

> Evidence has been introduced that the defendant committed an offense other than that which is now charged. This evidence was admitted solely for your consideration as to whether it tends to show that the defendant intended to commit the offense which is now charged.
> Although evidence of this nature is allowed, it may be used only to show: motive, intent, absence of mistake or accident and common scheme. You may not consider it as tending to show in any other respect the defendant's guilt of the offense with which the defendant is charged.

(continued . . .)

#25070

[¶29.]        Affirmed.

[¶30.]        GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY,

and SEVERSON, Justices, concur.

[¶31.]        MILLER, Retired Justice, sitting for ZINTER, Justice, disqualified.

---

(. . . continued)

You are not required to consider this evidence and
whether you do is a matter within your exclusive province.

-14-